UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRAVIS M. WILLIAMS, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-3116** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "B" (4)** |

### REPORT AND RECOMMENDATION

**I.   Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 United States Code § 405(g).  The Commissioner denied Travis M. Williams, Sr., Disability Insurance Benefits under Title XVI of the Social Security Act, Title 42 U.S.C. § 1382c.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 United States Code § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations

**II.   Factual and Procedural Summary**

The claimant, Travis M. Williams Sr., is a thirty-six-year-old man with a high school diploma and some military training as a diesel mechanic.  (Tr. 29).  He alleges that he has been disabled since January 1, 2003, due to a back injury and groin hernia.  (Tr. 94, 111).

On July 2, 2003, Williams filed an application for Disability Insurance Benefits and sixteen

days later it was denied. (Tr. 94-96, 60). Williams then requested a review by an administrative law judge and a hearing was set for January 14, 2004. (Tr. 74-78). The matter was assigned to Administrative Law Judge Philip McLeod.

Although the hearing began on January 14, 2004, the ALJ discontinued the hearing because he felt that an orthopedic consultive examination was necessary to determine if Williams' limitations were such that he was disabled. (Tr. 39-40). He also wanted the consultant to consider the side effects of medication taken by Williams. (Tr. 39).

On June 3, 2004, the hearing resumed. However, the ALJ noted that rather than send Williams to an Orthopedic or Neurological Consultant, he was referred to a psychological consultant.[1] Despite this error, the ALJ indicated that he had enough medical evidence to determine whether Williams was disabled. (Tr. 44).

After conducting the hearing, the ALJ found that Williams met the non-disability requirements for a period of disability and insurance benefits. (Tr. 22). He further found that Williams's back problems and hernia were severe within the meaning of the regulations but that his testimony regarding his physical limitations was not totally credible. *Id.*

The ALJ found that Williams had the residual functional capacity to perform work up to the light level of exertion, that he could walk or stand for four hours in an eight hour day, and that he could sit for up to four hours in an eight hour day with a sit or stand option. The ALJ further found that Williams could grasp, hold and use fingers for precise work, and climb, balance, kneel and stoop occasionally. *Id.* The ALJ found, however, that Williams could not perform his past relevant work. *Id.* The ALJ also found that there were significant numbers of jobs in the national economy

---

[1] The psychological consultant was chosen even though Williams did not assert that he was disabled due to a mental condition. The conditions that Williams complained caused his disability are back pain and a hernia.

that he could perform including working as a cashier, telemarketer, customer service representative, traffic clerk, and general office clerk. *Id.*

Williams then sought review of the ALJ's decision with the Appeals Council. (Tr. 10-11.) On October 1, 2004, the request was denied. (Tr. 5-8). Williams therefore filed this request for review on November 30, 2004. (Rec. Doc. No 1).

**III.   Issues**

   A.   Whether the ALJ  erred when determining that Williams was less than credible because he failed to explain his reasons in the opinion and failed to comply with SSR 96-7P.

   B.   Whether the ALJ's  failure to send Williams to an orthopedic consultive examination after determining that he was sent to a psychological consultive examination renders the decision not based on substantial evidence.

   C.   Whether the  ALJ failed to fully consider the side effects of Williams's medications and their impact on  his ability to function such that his decision is not based on substantial evidence.

**IV.   Standard of Review**

The role of the Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary. *See id*. If supported by substantial evidence, then the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept  to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "It is more than a mere

scintilla and less than a preponderance." *Id.* It must do more than create a suspicion of the existence of the fact to be established, and no "substantial evidence" will be found only when there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A). Section 423(d)(3) of the Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do

other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five. *See Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**V.      Analysis**

    **A.      Credibility Finding of Williams**

Williams contends that the the ALJ erred by concluding that he was less than credible because the ALJ failed to fully explain his reasons. Williams further contends that the ALJ failed to apply SSR 96-7p.

The Commissioner contends that judgment as to credibility is the province of the ALJ. It further contends that the ALJ's determination is entitled to considerable deference.

In assessing the credibility assertions of disabling pain, the ALJ is free to consider the following factors: (1) the onset of pain is related to a precise event;[2] (2) whether there are consistent notes of pain in the medical record, including diagnosis and prescription of pain medications;[3] and (3) there is a consistency with the medical evidence.[4] *See Francois v. Bowen*, 158 F.Supp.2d 748, 763-764 (E.D.La. 2001). The ALJ may not ignore the subjective complaints of the claim if supported by medical signs and findings. *Veal v. Bowen,* 833 F.2d 693, 698 (7th Cir. 1987).

Mild or moderate pain does not render a claimant disabled. *See Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir.1987). Further, subjective evidence need not take precedence over objective evidence. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988). Moreover, a fact finder's

---

[2]Pain constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *See Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990).

[3]*See Carpenter v. Heckler*, 733 F.2d 591, 592-93 (8th Cir. 1984).

[4]*See Holland v. Heckler*, 768 F.2d 277, 281 (8th Cir. 1985).

evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence.  *Id.* at 1384.

According to the record, the ALJ found that Williams's testimony was not totally credible.  He noted that although Williams indicated that he regularly lies down, there is nothing in the medical record suggesting that it was needed. (Tr. 20).  The ALJ further noted that while Williams claimed he was in pain all the time, he only had a mild stenosis and degenerative disc disease.  *Id*. The ALJ further indicates that the record does not support that Williams has any evidence of nerve root damage compression, limitation of motion of the spin, or motor loss accompanied by sensory or reflex loss.  *Id.*

The record  does not support the ALJ's conclusion that while Williams had pain, the pain was not as severe as he contends.  For example, the MRI shows that Williams has degenerative changes of the lumbar spine resulting in mild spinal canal stenosis at L-3, L3/4, L4/5.  (Tr. 299).  It further showed moderate bilateral neuro-foraminal narrowing at L4/5,L2/3, and L3/4.  *Id.*   The medical literature indicates that symptoms of lumbar stenosis appear or worsen with the onset of amublation or on standing, and are promptly relieved by sitting or lying down.[5]

Further, Williams was examined by Dr. Mary Mathai, a Physical Medicine and Rehabilitation Specialist.  (Tr. 297-299).  On physical examination of his lower extremities, Dr. Mathai noted that Williams had full range of motion in his hips, knees, and ankles. (Tr. 299).  There was no evidence of pitting edema.[6]     *Id.*  She noted that he was prescribed Naproxen 500 mg and

---

[5]American Family Physician, Lumbar Spine Stenosis: A Common Cause of Back and Leg Pain, http://www.aafp.org/afp/980415ap/alvarez.html.

[6]In non-pitting edema, which usually affects the legs or arms, pressure that is applied to the skin does not result in a persistent indentation.  Non-pitting edema can occur in certain disorders of the lymphatic system such as lymphedema, which is a disturbance of the lymphatic circulation that may occur after a radical mastectomy, or congenital lymphedema.  Another cause of non-pitting edema of the legs is called pretibial myxedema, which is a swelling over

Cyclobenzaprine 10 mg HS.  (Tr. 298).

Dr. Mathai noted that sitting straight leg raising was done with the support of his arms. (Tr. 299). She also noted atrophy on his left leg as his thighs and leg was smaller than on the right. *Id.* However, he could perform the heel toe walk test and stand and hop on each leg. He could also squat. He had no reflex in the left knee[7] and scoliosis[8] was also present. *Id.* Dr. Mathai concluded that Williams was not a candidate for work involving prolong walking, standing, carrying and heavy lifting. *Id.* Dr. Mathai further concluded that Williams was capable of performing light work. *Id.*

He was observed by his treating physician Dr. Lockhart who confirmed the lumbar stenosis. He complained of having difficulty with physical therapy and pain, so he stopped going. He complained of little relief with the Naproxen[9] and was scheduled to go to a pain clinic in May. (Tr. 352). Williams was instructed to use Flexeril[10] for sleep and pain relief. (Tr. 352). In March 2004,

---

the shins that occurs in some patient. Medicinenet.com, Edema, http://www.medicinenet.com/edema/page2.htm.

[7] The patellar reflex or knee jerk is a reflex employing only three neurons. Striking the patellar ligament just below the patella stretches the quadriceps tendon. This stimulates sensory receptors (most importantly, muscle spindles) that trigger an impulse in a sensory neuron that leads to the lumbar region of the spinal cord. There, the sensory neuron synapses directly with an interneuron, then to a motor neuron that conducts the impulse to the quadriceps, triggering contraction. This coordinated with the relaxation of the antagonistic flexor hamstring muscle causes the leg to kick. It has been thought that this type of reflex helps maintain the upright posture. However, Russian scientists Gurfinkel, Lipshits and Popov showed that different control mechanisms govern human vertical posture. Wikipedia, Patellar Reflex, at http://en.wikipedia.org/wiki/Patellar_reflex. The L2, L3 and L4 nerve roots control the quadriceps muscle, which can be evaluated by manually trying to flex the actively extended knee. American Family Physician, Clinical Evaluation and Treatment Options for Herniated Lumbar Disc, http://www.aafp.org/afp/990201ap/575.html. The spinal level of the reflex is L3-4. *See Patellar Reflex*, *supra*..

[8] Scoliosis is a sideways curvature of the spine, or backbone. The degree of scoliosis ranges from mild to severe. Patients with milder curves may only need to visit their doctor for periodic observation. Persons with more severe scoliosis may require treatment. Medicinenet.com, Scoliosis, http://www.medicinenet.com/scoliosis/article.htm

[9] Naproxen (INN) is a non-steroidal anti-inflammatory drug (NSAID) commonly used for the reduction of mild to moderate pain. Wikipedia, Naproxen, http://en.wikipedia.org/wiki/Naproxen.

[10] Flexeril is typically prescribed to relieve pain and muscle spasms. Typically, muscle spasms occur in an injury to stabilize the affected body part and prevent further damage. The spasm of the muscles can actually increase the pain level. It is believed that by decreasing muscular spasm, pain is diminished. Wikipedia, Cyclobenzaprine,

he was also prescribed Tramadol 1/2.[11]

Contrary to the ALJ's conclusion, Dr. Mathai found that Williams had no reflex on his left leg which suggests clinically that the L3-4 disc level is a source of his spinal nerve root problem. Dr. Mathai therefore opined that Williams probably had left L4 radiculopathy which is nerve irritation caused by damage to the discs between the vertebra as a result of degeneration ("wear and tear") of the outer ring of the disc. (Tr. 299).

Consistent with his testimony, he has had difficulty managing the pain as demonstrated by the increase in pain medication provided to him by his treating physician. The record shows that he complained that Naproxen, which is used for the treatment of mild to moderate pain, provided little relief. (Tr. 352). As a result his treating doctor prescribed Tramadol, which is used for the treatment of moderate to severe pain. *Id*. He was instructed to take ½ tab for pain, up to 2 pills per day. The Court finds that the ALJ's credibility determination is not based upon substantial evidence.

### B. Consultative Examination Error

Williams next contends that the ALJ erred when he failed to send him to an orthopedic consultant after determining during an earlier hearing that a consultation was medically necessary for him to fairly determine if Williams was disabled.

The Commissioner contends that the Court should summarily reject this issue as the plaintiff has not referred the Court to a case that supports his position.

Title 20 CFR 404.1519 provides that a consultative examination may be done at the request

---

http://en.wikipedia.org/wiki/Flexeril

[11]Tramadol (INN) is an atypical opioid which is a centrally acting analgesic, used for treating moderate to severe pain. It is a synthetic agent, unrelated to other opioids, and appears to have actions on the GABAergic, noradrenergic and serotonergic systems. Wikipedia, Tramadol, http://en.wikipedia.org/wiki/Tramadol

of the agency and is used to resolve a conflict or ambiguity in the medical records if one exists.  20 C.F.R. § 404.1519.  The regulation further indicates that a consultative examiner is used to secure medical evidence that is needed but not included in the file.  *Id.*  A consultive examination may be used when the medical evidence is not sufficient to support a decision on the claim of disability. *Id.*  Further, the regulation provides that the agency will only  purchase the specific type of examination it needs.  *Id.*

The record shows that during the January 2004 hearing, the ALJ decided that he felt that Williams could do a limited range of light, sedentary work.  However, the ALJ  felt that it was important to send Williams to an orthopedic consultive examination to determine his residual functional capacity. (Tr. 39).  The ALJ further indicated that if the results came back consistent with Exhibit 13F, which was a medical assessment performed by Dr. Charles Haddad, a doctor at the Veterans Administration, then he would conclude that Williams was disabled.  *Id.*

However,  during the June 2004 hearing, the ALJ determined that the administration rather than sending Williams to an orthopedic specialist, sent him to a psychologist.  The record further shows that the only conditions for which Williams sought a disability determination were his low back pain and a hernia.  He did not claim any disability associated with a mental condition.

Despite the apparent determination by the ALJ that it was important to secure an orthopedic consultive examination, Williams did not have the orthopedic exam.  The ALJ further indicated that the exam was important to resolve a conflict in the medical evidence.  Nevertheless, the ALJ determined that Williams was not disabled without resolving the apparent conflict.  The Court finds that in light of the determination that it was important to resolve the conflict and the resulting failure to do so, that the ALJ's opinion is not based upon substantial evidence.

### C.     Consideration of the Medication Side Effects

Williams also contends that the ALJ erred because he did not fully consider the side effect of the medication he was taking when determing his residual functional capacity. He contends that the medication makes him drowsy and causes him to fall asleep 2-3 times a day for 1 hour and 45 minutes.

The Commissioner does not address this issue.

SSR 96-7p specifically requires consideration of side effects of "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" when assessing an individual's statements. Soc. Sec. Ruling 96-7p (July 2, 1996); 20 C.F.R. §§ 404.1529(c)(3)(iv),   Pursuant to SSR 96-8p, a residual functional capacity assessment "must be based on all of the relevant evidence in the case record," including "the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Soc. Sec. Ruling 96-8p (July 2, 2996). According to the record. Williams is required to take several medications, including Naproxen, Tramadol, Cyclobenzaprine, Viagra, Codeine, Cyprozen and Diflucan. Drowsiness, dizziness and decreased muscle function are listed among their common side effects.

The record documents that Williams complained of drowsiness and dizziness on several occasions. (Tr. 341 and 363). Accordingly, an evaluation of medication side-effects and any impact on William's residual functional capacity would have been appropriate in this case and the ALJ erred by failing to make such an evaluation.

### VI.     Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Travis

Williams, Sr., Disability Insurance Benefits be **REVERSED** and **REMANDED** for further development of the record in compliance with SSR 96-7p, 20 C.F.R. § 404.1512, and SSR 96-8p. The ALJ is further required to secure a orthopedic consultant and have a Physical Residual Functional Capacity Examination completed by an accepted medical source upon remand.

    A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 31st day of July 2006

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**